IfoEPny, J.
delivered the opinion of the court. [23]
The plaintiffs assert .title to a piece of property in the possession of defendant, under a joint and reciprocal will or testament of their ancestor, André Bernard, and his wife Marie Francisca Robert, bearing date the 13th September, 1790. By this will they institute each other sole and universal heir, with the proviso, that in the event of their having any children, this mutual disposition shall become null and void. They further provide, that at the period of the death of the survivor thus instituted, one third of such property as may then exist, shall go, by way of legacy, to certain persons therein named, the relations of the wife; and they make a similar disposition on the happening of the same contingency, of the remaining two thirds of the property in favor of the persons under, whom the present plaintiffs claim; they being the brothers and sisters of the husband.
The record shows, that André Bernard died the same year this will was made; and his widow died in 1834. The latter, on the 4th of March, 1828, sold the property in dispute to Pacquelet, at whose death, in 1832, it was purchased by defendant at a probate sale of Ms estate.
*376 The clauses in the will which give rise to this controversy, are in the following words, to wit:
“ Y del remanente de nuestro bienes, dendas, &c., nos nombramos el uno por otro por Unico y universal heredero para que el que sobreviviere de nos lo goce con la bendición de Dios...... Y para en el caso de que se diserelva el matrimonio por muerte de alguno de nos sin tener hijos, queremos y es nuestra ultima voluntad que valga este como nuestra final disposición, mutua, reciproca, &c. Oon el buen entendido que por muerto del sobreviviente la torcera parto de los bienes que hubiere existentes en aquella época, se le apliquen porvia de legado que desde ahora mutuamento le hacemos á Don Nicolás, Don Bartholomé, Don Fernando, y Doña Maria Durochée.
[24] “Desde ahora para quando fallesca el sobreviviente de nos, legamos y donamos á Doña Maria Juana, Doña Catalina, Doña Magdelina, Doña Isabel y Dona Margarita Bernard, las dos partes de nuestros bienes,” &c.
It is contended, on the part of plaintiffs, that this will contains a substitution which was permitted by the laws of the country in force at the death of André Bernard; that it conferred on their ancestors rights, which no subsequent legislation could affect; that, although the survivor of the two spouses, Mrs. Bernard, was instituted universal heir, she had only the usufruct or enjoyment of the property bequeathed; had no right to alienate it, but was bound to keep and transmit it to them ; and this they say is the only construction which can satisfy the rule which requires effect to be given, if possible, to every part of a deed.
The construction appears to us at variance with the very terms of the instrument. From its whole context, it is clear that the intention of the two testators was to make in favor of each other the same disposition and bequest, and to place their respective heirs on the same footing. The expressions, de los bienes que hubiere existentes en aquella época, although not repeated in the last clause, apply, in our opinion, to the two thirds of the property bequeathed to the relations of the husband, as well as to the third bequeathed to those of the wife. They leave no doubt in our minds, that on the death of André Bernard, his widow became, as his universal heir, the absolute owner of the estate. She was not burdened with the obligation to keep and deliver it over to the persons named in the will. She had the free and absolute control of it; but if any part of it remained undisposed of at her death, then it was to have been divided according to the will. Although the power to alienate is not expressly given, it can fairly be deduced from the above mentioned expression in the will, coupled with the absence of any obligation or charge to preserve for and return the estate to the substituted [26] heirs. This obligation or charge, which limits the otherwise absolute ownership of an universal heir, is one of the essentials which characterize an ordinary gradual substitution. This will contains, we think, a disposition well known to the former laws of the country as the fidei commiissum cum, libera] or fidei commissum de eo quod supererit. Toullier' informs us, that dispositions of this kind were very frequent between man and wife in some parts of France, and do not, in his opinion, come within the purview of article 896 of the Napoleon Code, which abolishes substitutions, &c., fidei com *377 missa, in nearly the same terms as article 1507 of the Louisiana Oode. Upon the whole, it appears to us that the joint testators intended to prefer each other to all other persons, and to divide whatever property might be left at the death of the survivor among their respective heirs.
But admitting, as is contended, that this will contains a gradual substitution binding on the survivor by the law in force in 1790, we do not think that it would strengthen the case of the plaintiffs. The rights of the persons under whom they claim did not vest, as is supposed by their counsel, at the death of André Bernard; they acquired then only an eventual right or rather a hope which did not descend to their heirs, the present plaintiffs.
Toullier, speaking of the rights of the substituted heirs which accrue only on the death of the grcmatus (grévé), says:
“ Us n’ont avant ce terns aucun droit formé sur les biens grévés de restitution mais une simple espérance qu’ils ne peuvent transmettre -1. leurs héritiers, &o.
“ La charge de rendre s’óteint si les appelés décédent avant l’époque marquee pour la restitution or lorsqu’ils se trouvent á cette époque incapables de reeueillir les biens.” 5 Toullier, Nos. 787, 738, 739. A substitution then is opened in favor of the substituted persons only by the death of the grcmatus ; until that event takes place they acquire nothing which can. be considered as a right or property in them; substituido quce non dim, eompetit extra, nostra bona est, (Law 42, D : Be Acquirendo Serum Bominio.) These plaintiffs [26] are the children and grandchildren of the persons named in the will who died long before widow Bernard. They cannot, therefore, exercise rights which never accrued to their ancestors. But even had any of the latter been living in 1834, it may well be questioned whether the Oode of 1808, abolishing substitutions and fided, commissa,, did not do away with the rights of all substituted heirs, which had not actually vested at the date of its promulgation. If from that time the plaintiffs’ ancestors had no longer the capacity to take under a substitution, the property bequeathed remained in the hands of widow Bernard free from all charge or obligation, if any had ever existed, and she had the right of selling, as she did, in 1828. Merlin, Questions de Droit, vol. 15, p. 50, et seq.; Jurisprudence du Oode Oivil, vol. 4, p. 16.
The judgment of the district court is, therefore, affirmed with costs.